**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| **VIATCHESLAV V. DOMBROVSKI, et al.,** | : | **Case No. 1:07cv0379** |
| | : | |
| | : | |
| **Plaintiffs,** | : | **JUDGE KATHLEEN O'MALLEY** |
| | : | |
| **v.** | : | |
| | : | |
| **SIRIUS INTERNATIONAL INSURANCE** | : | |
| **CORPORATION, et al.,** | : | <u>**ORDER**</u> |
| | : | |
| | : | |
| **Defendants.** | : | |

This is an action challenging the denial of insurance claims.  Plaintiffs Viatcheslav

Dombrovski and Maia Dombrovskaia are citizens of Russia and residents of Ohio.  Defendant Sirius

International Insurance Corporation ("Sirius") is a Swedish corporation with its principal place of

business in Sweden, and Defendant International Medical Group, Inc, ("IMG") is an Indiana

corporation with its principal place of business in Indiana.  Plaintiffs filed this action in the Court

of Common Pleas for Lake County, Ohio, and Defendants removed the action to this Court.

Jurisdiction is proper under 28 U.S.C. § 1332.

Pending before the Court are two motions: Defendants' Motion to Transfer (Doc. 9) and

Plaintiffs' Motion to Compel a Bond (Doc. 12).[1]  In their Motion to Compel a Bond, Plaintiffs argue

---

[1]  Also pending is an unopposed motion by Defendants to file the affidavit of Cindy Reed
under seal (Doc. 18).  Reed's affidavit accompanies Defendants' brief in opposition to the
Motion to Compel a Bond, and, apparently, relates to the details of Plaintiffs' medical claims, the
amounts paid, and the amounts denied.  As these details are relevant only to the background of
this lawsuit and the merits of the underlying claims, the Court does not view them as necessary to
resolve the issues presently before it.  To the extent Defendants still wish to file this affidavit
under seal, their motion is **GRANTED**.

that Defendants are subject to an Ohio law that requires "any unauthorized foreign or alien insurer" to either deposit a bond or procure a certificate of authority to transact business in Ohio before that insurer "may enter an appearance in any court action." O.R.C. § 3901.18. Plaintiffs argue that, because Defendants have not complied with O.R.C. § 3901.18 ("Section 3901.18"), Defendants cannot properly appear in this action. As a result, Plaintiffs argue that the Court should strike Defendants' Motion to Transfer and prohibit Defendants from filing any further pleadings until they comply with Section 3901.18. Plaintiffs ask the Court to impose a bond in the amount of $2.3 million.

Although Defendants do not dispute that, as a general matter, a federal court sitting in diversity must apply Section 3901.18, *Akron Co. v. Fid. Gen. Ins. Co.*, 250 F.Supp. 201 (N.D. Ohio 1964), Defendants argue that they are not subject to the bond requirements of Section 3901.18. First, Defendants claim that IMG is not an insurer, but a managing general underwriter for Sirius, and is, therefore, not governed by these requirements. Second, Defendants argue that Sirius is an eligible surplus lines insurer and, accordingly, is exempt from Section 3901.18 by virtue of an exception listed in O.R.C. § 3901.17 ("Section 3901.17"), a long arm statute governing the personal jurisdiction of Ohio courts over foreign insurers. Finally, Defendants argue that the insurance policies at issue in this case are governed by Indiana law and, as a result, Ohio law, including this bond requirement, does not apply.[2]

After careful consideration, the Court concludes that Defendants are subject to the requirements of Section 3901.18. As to IMG, Defendants admit in their Answer that "IMG is the

---

[2] Defendants advance this argument in their *Response to Plaintiffs' Notice of Additional Authority* (Doc. 25). The Court accepted additional authority after it was forced to cancel the hearing that was originally scheduled to address these motions.

authorized and disclosed agent of Sirius, and it acts on behalf of Sirius for purposes which include selling, marketing, underwriting, issuing, delivering, and administering policies in Indiana." (Doc. 14 at ¶ 6). In addition, Defendants do not dispute that IMG is not authorized by the State of Ohio to transact business in Ohio. These facts are sufficient to qualify IMG as "any unauthorized foreign or alien insurer" within the meaning of Section 3901.18 and, thus, make it subject to that provision's requirements.[3]

The Court is also not persuaded by Defendants' argument that Sirius, as an eligible surplus lines insurer, is exempt from 3901.18. In support of this argument, Defendants rely on Section 3901.17, which is a long arm statute that outlines the types of actions by foreign insurers that constitute "the doing of an insurance business" for purposes of establishing personal jurisdiction over those insurers. Surplus lines insurance is specifically exempted from that statute. O.R.C. § 3901.17(I)(1). Based on that exception, Defendants argue that Sirius should also be excepted from the requirements of Section 3901.18. In response, Plaintiffs argue that Sirius cannot claim an exception afforded to surplus lines insurers because Sirius has not satisfied the procedural requirements imposed by the State of Ohio for the sale and issuance of surplus lines insurance.

Regardless of whether Sirius has complied with the requirements for the sale of surplus lines insurance, the Court finds that the exceptions contained in Section 3901.17 simply do not apply to Section 3901.18. Sirius, therefore, is not exempted from the requirements of Section 3901.18 simply because it may be a surplus lines insurer. The Court's conclusion is consistent with other courts that have addressed this question. *See Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*, Case No.

---

[3] IMG does not dispute that it is a "foreign" entity for purposes of this statute, and at least two other sections of the Ohio Revised Code relating to insurance define "foreign" as including out-of-state companies. *See* O.R.C. §§ 3941.01(C), 5725.01(E).

1:03cv1322 (N.D. Ohio March 2, 2007) (order granting a motion to compel a surplus lines insurer to post a bond); *Int'l Surplus Lines Ins. Co. v. Certain Underwriters & Underwriting Syndicates at Lloyd's of London*, 868 F.Supp. 923 (S.D. Ohio 1994) ("[T]he Court has not found anything . . . which supports the Defendants' theory that Section 3901.18 is not applied where personal jurisdiction is not obtained through Section 3901.17."). First, Section 3901.18 is written in broad terms to apply to "<u>any</u> unauthorized foreign or alien insurer." (emphasis added). In addition, as the court in *Bondex* noted, there are nine exceptions listed in Section 3901.17, and one of those exceptions (for ocean marine insurance) is listed <u>again</u> in Section 3901.18. *See* O.R.C. §§ 3901.17(I)(8), 3901.18(D). The fact that one exception, but not the others, is listed again indicates that the legislature did not intend for all of the exceptions of Section 3901.17 to apply to Section 3901.18. To conclude otherwise would render the exception for ocean marine insurance in Section 3901.18 superfluous, a construction that is disfavored. *See Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253 (1992) ("[C]ourts should disfavor interpretations of statutes that render language superfluous."). Accordingly, the Court concludes that, even if Sirius can claim that it has complied with the requirements for the sale of surplus lines insurance in this case (a question which the Court does not resolve here), it is not exempt from the requirements of Section 3901.18.

Finally, the Court is also not persuaded by Defendants' argument that Section 3901.18 does not apply because, according to Defendants, Indiana law, rather than Ohio law, applies to the insurance policies at issue in this case. This is a choice of law argument that is based primarily on a choice of law provision that is in only one of the policies issued to Dombrovski. Under the

Restatement (Second) of Conflict of Laws,[4] "[a] court usually applies its own local law rules prescribing how litigation shall be conducted even when it applies the local law rules of another state to resolve other issues in the case." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 122; *see also Lawson v. Valve-Trol Co.*, 81 Ohio App. 3d 1, 4 (Ohio Ct. App. 1991) ("In choice-of-law situations, the procedural laws of the forum state . . . are generally applied."). In addition, as it relates specifically to choice of law provisions in contracts, the Sixth Circuit has explained that "contractual choice-of-law clauses incorporate only substantive law, not procedural provisions . . . ." *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998) (applying Ohio's relevant statute of limitations). Another section of the Restatement, moreover, specifically provides that "[t]he local law of the forum determines the methods of securing obedience to orders of the court," including, as indicated in the comment to that section, "an order to give bond." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 130 cmt. a. For purposes of a choice of law analysis (as distinct from an *Erie* doctrine question), therefore, Section 3901.18 is a procedural law that is directed at the judicial administration of litigation and, thus, should be applied in this case regardless of whether Indiana law applies to the insurance policies at issue (a question that the Court does not decide at this stage).

Having concluded that Defendants are subject to the requirements of Section 3901.18, the Court must determine an appropriate amount for the bond. According to the statute, the Court should impose a bond "sufficient to secure the payment of any final judgment which may be rendered" in this action. O.R.C. § 3901.18(A)(1). Plaintiffs ask for $2.3 million. This number is

---

[4] "In diversity cases, the district court is to apply the choice of law rules of the state in which the court sits." *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 501 (6th Cir. 2003). In this case, the forum state, Ohio, has adopted the choice of law rules of the Restatement (Second) of Conflict of Laws. *Morgan v. Biro Mfg. Co., Inc.*, 15 Ohio St.3d 339, 341-42 (1984).

derived, in part, from the combined total limit of the six policies that the Plaintiffs claim are relevant to the lawsuit (three each per plaintiff), which totals $300,000.  In addition, Plaintiffs argue that the bond should also cover any judgment Plaintiffs may obtain for their bad faith claim or claim for violation of Ohio's Consumer Sales Practices Act.

In response, Defendants argue that the total amount of <u>uncompensated</u> medical claims in this lawsuit is only $47,781.69, and that the combined total limit for all six policies is irrelevant because Plaintiffs did not submit claims reaching their combined total limits.  Defendants also argue that there is no evidence of bad faith that would necessitate the types of damages Plaintiffs claim should be covered by the bond.

The Court agrees with Defendants that the disputed amount of uncompensated medical claims, not the face limit of all six policies, is the relevant amount to consider for purposes of a bond. The Court, however, is not persuaded that the lack of evidence showing bad faith, especially at this early stage of the litigation, should prevent the Court from considering that claim for purposes of the bond.  Based on these considerations, the Court concludes that $800,000 is an appropriate bond amount.  In so finding, the Court, of course, expresses no opinion on the ultimate merit of any of Plaintiffs' claims.  The Court also does not intend the amount of the bond to reflect either a cap or a minimum of the value of any of Plaintiffs' claims, if successful.  It is merely an attempt, in furtherance of the public policy behind this provision of Ohio law, to secure the payment of any judgment that "may be rendered."

For the reasons stated above, Plaintiffs' Motion to Compel a Bond is hereby **GRANTED**. Section 3901.18, of course, gives Defendants either the option of posting a bond or procuring a certificate of authority to transact business in the State of Ohio.  **The Court, therefore, <u>ORDERS</u>**

**Defendants, <u>within thirty (30) days of the date of this Order</u>, to either obtain a certificate of authority or post a bond in the amount of $800,000**.

In addition, because Defendants are required to comply with Section 3901.18, but have not yet done so, they technically cannot have entered an appearance in this action. Accordingly, the Court **DENIES as procedurally improper** Defendants' Motion to Transfer and **STRIKES** Defendants' Answer (Doc. 14).[5] Both of these filings may be reasserted once Defendants comply with Section 3901.18.[6]

**IT IS SO ORDERED.**

                                      s/Kathleen M. O'Malley
                                      **KATHLEEN McDONALD O'MALLEY**
                                      **UNITED STATES DISTRICT JUDGE**

**Dated: September 6, 2007**

_____

[5] Although Plaintiffs' seek to "strike"only Defendants' Motion to Transfer, Defendants' Answer was filed after Plaintiffs moved to compel a bond. As Plaintiffs also seek to prohibit Defendants from filing any further pleadings, the Answer falls within their request to strike. The Court strikes only the Answer (and denies, rather than strikes, the Motion to Transfer) because Rule 12(f) of the Federal Rules of Civil Procedure is directed only to "pleadings." A motion is not contemplated in the list of "pleadings allowed" in Rule 7(a) of the Federal Rules. While some courts have employed Rule 12(f) to strike other filings, *McLaughlin v. Copeland*, 435 F. Supp. 513 (D.C. Md. 1977), there is no basis in the Federal Rules for doing so. In fact, a decision in this district, affirmed by the Sixth Circuit Court of Appeals, refused to employ Rule 12(f) to strike an affidavit because "the rule relates only to pleadings and is inapplicable to other filings." *Dawson v. City of Kent*, 682 F. Supp. 920 (N.D. Ohio 1988), *affirmed*, 865 F.2d 257 (6th Cir. 1988).

[6] If Defendants wish to reassert their Answer and Motion to Transfer after they comply with Section 3901.18, they need only file a written notice of reassertion with the Court. Both the Answer and Motion to Transfer (and accompanying briefing) will be deemed to be asserted as of the date of their initial filing.